When you're ready. Good morning, your honors, and may it please the court. Deputy Federal Public Defender Alexandria Yates on behalf of Paulo Lara. And your honors, this case is about the constitutionality of a warrantless, suspicionless probation search of cell phone data. And I'd like to start by emphasizing that a ruling for the government in this case would vastly expand what is supposed to be a very narrow exception to the general warrant requirement. Specifically, the Supreme Court has never found a suspicionless probation search constitutional in any context. Now, this court, an outlier among federal circuits on this point, has done so, but only once, and that's in the King case. And this case is far different from King, which upheld a suspicionless probation search of a violent felon's traditional property where there was a clear and unambiguous condition that authorized it. Here... I fully agree with your honors' point in that case, but we have King to deal with, and under the majority, I would take it as a clear and unambiguous probation search. That's true, your honor. I agree. But here we do have a nonviolent probationer. Instead of traditional property, we have highly private, personal cell phone data, and we have no explicitly authorizing probation condition. At most, it's ambiguous. In these circumstances, even conceding some important government interests, and of course some reduction in Mr. Lara's reasonable expectation of privacy to account for his status as a probationer, under the totality of the circumstances, the warrantless, suspicionless search of his cell phone data was unconstitutional. Second, your honor, I think it's important to note that the Riley case was not just unanimous, but it was a unanimous discussion, not only of the incredibly strong privacy interests a person has in his personal cell phone data, which the Riley court suggested are greater than the interest... So does it make a difference that Riley arose in the context of a search incident to an arrest? It makes a difference in the fact that it's not 100% completely controlling in this case, but I find it hard to see how, in light of Riley, one could say, as the government does in this case, that Mr. Lara's privacy interests were small or minimal, or as the district court said in this case, of course the district court did not have the benefit of Riley, which this court now has before it. Is there a good faith exception to a warrantless search? There is a good faith exception. The only one that the government has argued is the Davis good faith exception, which of course we know from both the majority and concurring opinions in that case, requires binding appellate precedent. The absence of controlling authority is not sufficient. That's not binding appellate precedent must specifically authorize the officer's actions. That's not what we have here. The supposedly binding appellate precedent... You prefaced your answer by saying the only good faith exception argued by the other side is X. Yes. Are there other good faith exceptions that the state has made a mistake on and not relied on? No, your honor. I don't think there's any others that would apply, but just to make it neat and simple. So any applicable good faith exception is okay with you? I'm sorry? So any applicable good faith exception is available here? No, I believe that any others would have been waived and aren't appropriately before the court. Because of the way they argued it? Both in district court and here. Yes, your honor. Absolutely. And of course the only supposedly binding appellate precedent that the government has relied on is the Diaz case. Aside from the fact that that's a state case and it's not clear whether that would qualify as binding appellate precedent, let's assume... Which case? I'm sorry? The Diaz case out of the California Supreme Court. Which is the consent case? They won it by cell phones, but that was overruled by Riley. That was exactly overruled by Riley. The argument is that it's an analogous situation, the search incident to arrest and the fact that Diaz authorized that there, provided binding appellate precedent for what the probation officers did here. That's simply not how binding appellate precedent works. It's not supposed to be an analogy. Moreover... Actually, it cuts in the other direction. Well, I would certainly agree that now it does in terms of what the officers would have known at the time pre-Riley. But also in terms of the merits in the sense that the... I mean, Riley didn't only say that it had a strong privacy interest. It said that essentially that the rules that otherwise govern search incident to arrest don't apply here because of that unusual privacy interest. Absolutely. The second important point of Riley is not just the important privacy interests, which I think are at their apex when we have cell phone searches, but also that cell phone data is not the same as traditional property. It is a beast that's quite different and needs to be analyzed differently. And to some degree in contra to an existing principle. So again, it is by analogy here, but the analogy is, you know, whatever we sort of... This is another line of authority, but Riley suggests that we don't just go down the line of authority. Absolutely, Your Honor. Absolutely. I would suggest, however, even putting aside the property issues, at the time the probate auction officers conducted these searches, and I do want to say searches because we have a separate forensic GPS search here too, which the government doesn't even begin to suggest that there's some sort of binding appellate precedent that would have authorized that. At the time, King 2 had not yet been decided. There was no binding appellate precedent that would have authorized a suspicionless probation search, whether of traditional property or of cell phone data. The King 2 case is really the only one that exists in this circuit on that point. King resulted in a search of the residence. Yes, Your Honor. This is a search of cell phone data. So is your point here that the cell phone data search, that that is more significant, more intrusive than the search of the home in King? Yes, Your Honor. And that's not simply my point, but that's Riley's point. And I would direct the Court to Riley at page 2491, where Chief Justice Roberts explains that a cell phone search typically reveals far more than the most exhaustive house search. So I think the Supreme Court has already explained to us that a cell phone search is going to be more intrusive than a typical house search. And we know that to be the case. I think an average person would keep on his or her, or may keep on his or her cell phone, all sorts of information that traditional home search would not authorize officers to go looking into. Might get access to medical records that would be kept off-site, bank records that would be kept off-site. You're essentially reviewing communications, which is like having an unauthorized wiretap. It's also the case that the residence search was specifically mentioned in the condition. Absolutely, Your Honor. And that goes to the other part of the balance in terms of the reasonable expectation of privacy. It's not just that the interests here are so great, and we know that under Riley. But also we don't have a clear and unambiguous condition authorizing this. Riley makes it very clear that cell phone data is not a traditional property. And so both sides of that equation are really quite different from the King case. Your Honors, I would like to reserve the balance of my time unless there's questions. Let's hear from the government and then you'll have a chance. Thank you very much. Good morning, Your Honors. May it please the Court. Ryan Weinstein on behalf of the United States. This appeal raises two issues. The first is whether or not the Fourth Amendment permitted a probation officer to search a cell phone pursuant to a broad suspicionless search condition that authorized the probation officers to conduct suspicionless searches of the probationer's property. The second issue is whether, if that search was unreasonable, whether the good faith exception should apply. Now, the search was reasonable for at least two reasons. The first is that it was reasonable under this Court's and the Supreme Court's general Fourth Amendment balancing test. The second reason it was reasonable is because the defendant consented to it by agreeing to the broad suspicionless search condition at the same time executing... How clear is it that the word property was understood to include searches of cell phone? I mean, if you'd asked ten years ago search of property, I doubt that anyone would have understood that that meant cell phone. First, the search condition itself placed no restriction on the types of property subject to search. You have a broad term property which conceivably could include not only do you look through physical property, but once you get your hands on a cell phone, you can push all the buttons and do everything to find out all the stuff that's stored there electronically. I understand that the term property could be read to include that, but is it clear that it includes that? Not only could it be construed to include all property, but for decades at the time the search condition was imposed, the California Supreme Court had interpreted the defendant's search condition as a broad waiver of all Fifth Amendment privacy interests. Neither this Court nor the Supreme Court has decidedly and consciously ever accepted the waiver notion as the answer. I mean, it's a factor, but it's not determinative, and I'm guessing that the large reason for that is because there's something fairly coercive about this consent, i.e. that they don't have a whole lot of choice. I don't know why, but whatever the reason is, it's never been the basis for any of this line of cases. You're absolutely right, Your Honor. The Supreme Court has yet to specifically address the issue of whether consent to a suspicionless search condition constitutes consent. It's been asked several times, and it just keeps going away from there. Correct. And the reason why the Supreme Court hasn't addressed it is because it hasn't needed to, because in each case it found the search reasonable under this conventional balance of interests. But there are concerns about agreeing to it also. Otherwise, they just would have done it. Fair enough, Your Honor. But my point here is, even if that broad search condition, even if that execution of what was called the Fourth Amendment waiver in the plea documents didn't in fact constitute a waiver of the Fourth Amendment privacy rights, it did, at a minimum, reduce what objectively legitimate privacy interests this probationer could possibly have obtained. It's an interesting worded provision. It says, person or property, including any resident premises, container, or vehicle. Now, I understand it says including, but there was some felt need to spell out certain things, and I assume you would agree that this is not a resident premises, a container, or a vehicle. Yes. Okay. Under today's precedent, yes. At the time of the search, this Court had held there was no claim to cell phones in other closed containers. It so held in 2008 in United States v. Arnold, and then reaffirmed that holding in a 2011 unpublished decision in United States v. Blunt. Was the question whether you can take the cell phone, which nobody's contesting here as I understand it. No one has an argument they couldn't seize the cell phone, right? I don't hear that argument either. Right. So, insofar as it resembles other property, i.e. it's a thing, you can take it. You can seize it. The question is whether you can use non-traditional methods to look inside of it, particularly the second forensic search. That's the larger issue. And the, so really the, and everybody agrees you can get a warrant. If you get a warrant, you can do that. Right? So, that's where the question is as to it being a, quote, container, for example. Yes. Your Honor, I think in light of this Court's decision in Camus, cell phones can no longer be considered closed containers for purposes of the Fourth Amendment. But at the time of the search, they certainly were. This Court had twice affirmed that closed containers and cell phones were no different from one another for Fourth Amendment purposes. So, the point though that I think the government and I are trying to make here is that the execution of the Fourth Amendment waiver, the agreement to this broad search condition that included property as an illustration of the various objects that were subject to search, constituted salient circumstances in the totality of circumstances analysis which this Court uses to evaluate the degree of intrusion into whatever legitimate privacy expectations the probationer retained. The probationer, of course, owing to his status as a probationer, starts with a lower expectation of privacy. That lower expectation of privacy is under this Court's holding in King significantly diminished by the salient circumstance of the broad suspicionless probation term. That term, as Your Honor pointed out, was even broader than the condition in King which this Court nonetheless found to significantly diminish that probationer's reasonable expectations of privacy. And to remove any doubt about what that scope of the probation condition was, the defendant concurrently executed what was called in the advisement of rights document a Fourth Amendment waiver in which he agreed on advice of counsel explicitly to waive whatever protections he had against unreasonable searches and seizures. Again, if that waiver under this Court's jurisprudence, under Supreme Court jurisprudence, did not in favor, it should nonetheless be yet another salient circumstance that further diminishes what the defendant could reasonably expect in terms of privacy of all of his property, be it digital or non-digital. And that's, of course, saying nothing of the defendant's use of a fake name to subscribe to the cell phone at issue which the District Court in this case found constituted yet another circumstance in the totality of circumstances to diminish the defendant's reasonable expectations of privacy. The name wasn't horribly fake in a way that anybody was going to have trouble finding the guy. He had the right address, the right last name. I mean, he just gave an analyzed version of his name, basically. It wasn't a successful attempt to distance himself. Well, he didn't try very hard. I mean, in other words, it isn't clear he was trying to fool anybody. Pardon? I mean, his name was, he had a Spanish name and he used an English name. It's not at all clear he was trying to fool anybody. Well, I'll submit, Your Honor, that Peter is not the English translation. Well, all right, so Paul, fine. And so while it wasn't a successful effort to distance himself from the phone, a successful effort to throw law enforcement off the path, it was nonetheless... That's because all effort wouldn't have used the same address. One didn't expect it to be successful. I mean, Your Honor, in Judge O'Scanlan's concurrence in Lozano, the facts weren't all that distinguishable. There, again, the name was different, but the address on the package was the correct one. Did you address the good faith exception? Yes, of course, Your Honor. So the relevant standard under Herring and Leon is whether a reasonably trained officer in California would have known, under all the circumstances, that the search was illegal. That is the test. Given the state of the law at the time of the search, the probation officers here had no reason to believe that their search was legal. Well, then why does Davis stress the existing precedent question? I'm sorry, Your Honor. Why does Davis seem to focus not... There's sort of two ways of looking at it, whether he would have affirmatively known or whether he would have been affirmatively misled. They're not the same. And Davis seems to be focused on whether he would have thought, legitimately thought something different than what was the case because of binding precedent. And you seem to be arguing that if there's a vacuum, then he wouldn't know. Well, that's because, Your Honor, the ultimate question is good faith. The ultimate question is whether the officers would have known under all the circumstances. Then how do you square Davis with that? Well, Davis actually cites that very language from Herring and Leon. What Davis concerned is one illustration of good faith, which might be manifested in the existence of binding appellate precedent on the very issue. But to say simply because there is no binding federal appellate precedent specifically authorizing the search, then the officers necessarily lack good faith is to turn the test on its head. And it's actually counter to the purpose of the exclusionary rule, the sole purpose recognized throughout the Supreme Court case law and the issue, which is deterring police misconduct that results in a Fourth Amendment violation. And there are a few reasons why the officers in this case would have no reason to believe that their search under the circumstances was legal. First, as I mentioned, decades of California Supreme Court precedent I see my time is almost concluded. I'll finish my sentence. Decades of California Supreme Court precedent, beginning with the 1987 decision in People v. Bravo, had construed defendant's search condition as a broad waiver of all Fourth Amendment privacy rights. Yeah, but by the time this search occurred, the Supreme Court cases existed, which didn't take that view. Nights and Sampson and so on. They had declined to address the issue, Your Honor. But these were State of California probation officers conducting a search under California law. In fact, the state of the law was so well settled, Your Honor, that it was a matter of protocol for the State of California Probation Office to search the cell phones of probationers, especially those probationers who had been convicted of drug trafficking offenses. And that's something set forth on page 76 in the excerpts of record in the probation officer's declaration. And so, for those reasons, given the State of California law, given People v. Diaz, which had specifically rejected the notion that cell phones were any different from other closed containers, the fact that Riley hadn't been decided for years after the search, and the fact that federal precedent was in accord, the 4th, 6th, and sorry, the 4th, 5th, and 7th circuits had all held like People v. Diaz for similar reasons that searches of cell phones incident to arrest were valid under the Fourth Amendment. For all of those reasons, the officers cannot be said to have lacked that good faith. There was not a whiff of deliberate negligence, recklessness, or any of the other criteria the Supreme Court typically looks for to see if the application of the exclusionary rule would have the determined effect it needs to have before the rule applies. For all those reasons, Your Honor, even if the search here was unreasonable under the Fourth Amendment, the good faith exception to the exclusionary rule should apply. Okay, thank you. Thank you. Ms. Yates, you've saved some time. A few points, and I'd like to start with the good faith point. I think Davis is clear and forecloses the government's argument that this sort of vacuum or best guessing by probation officers can be sufficient. You need to have specifically authorizing by any appellate precedent, and to the extent Davis includes some language about good faith that the government's trying to analogize to, those other cases are where something else outside of the officers has gone wrong. There's a database error or a magistrate has improperly issued a warrant, something like that. Here, we're not talking about something external to the officers. We're talking about the officers themselves making their own judgment in a vacuum of what they might be allowed to do. And I think Justice Sotomayor's concurrence in Davis is very persuasive on why that is not what binding appellate precedent is all about. I would also emphasize, again, there was no binding appellate precedent allowing searches without any suspicion whatsoever at the time. As to the point about consent and waiver in the Schneckloth context, the district court rejected this point, and I would say that it is foreclosed quite squarely by this court's prior decision in Scott, and also the Consuelo Gonzalez, but mostly Scott, which very clearly decided that when an individual gives up certain rights in exchange for a release of liberty, that the conditions that are imposed still need to be constitutional. Let's rewrite the probationary suspicionless search provision so that it says search of property including cell phones so that it's absolutely unambiguous. Cell phone data. I get to push as many buttons and tap on the screen as many times as I want. I can engage a forensic expert to look into the trash. I can do anything I want to get out of that cell phone what I might be interested in. So let's have that be absolutely unambiguous. What's the answer? What happens then? It's going to be a case-by-case answer, Your Honor, and I don't think it's at all clear that in every case or even in most cases that the answer's going to be that the search is constitutional. First, there'll be a question about whether the condition imposed is lawful, but assuming it was lawfully imposed and appropriate to the case. Given what the Riley Court said, not only about the incredibly important privacy interests in cell phone data, but also the Riley Court makes this more general statement that although the information on a cell phone isn't immune from search, a warrant is generally required. And when it says that, it seems to be talking beyond the search incident to arrest context. I think that even though you would have a clear and unambiguous condition, which is part of the reasonable expectation of privacy analysis, you still would have such an increased or an important expectation of privacy in this highly personal data that depending on the government's interest side of the balance in that particular case, certainly there might be some times when that was unconstitutional. Perhaps there's some times when it would be. But unconstitutional because the state does not have the power to enter into such a contract? As to the waiver point, yes. What I'm talking about is, we're talking reasonable expectation. If the language is crystal clear, if I'm talking ordinary sense of reasonable expectation, my reasonable expectation as the probationer is, well, there's the language, it's crystal clear, that's what I expect. Now, it may be that the state does not have the power to oblige me to enter into that contract as a condition for my getting parole. Yes, Your Honor, and I think the Scott decision is quite clear that in fact, it doesn't have that carte blanche power that we need to assess the constitutionality, which would then come down to the totality of circumstances analysis that, as I was saying, would be on a case-by-case basis. Of course, that question, I understand, the question is not now before us, but I'm trying to figure out if we're writing something beyond a mem dispo, what we stay away from, what we might say. Absolutely. I think that the Schmuckloff question has been decided by this Court in Scott. To the extent that this Court thinks that that is an open question that needs to be addressed, I don't think that this Court... Well, it's certainly an open question as a matter of Supreme Court law. It is an open question as a matter of Supreme Court law, although I agree with Your Honor that the Supreme Court has strongly suggested that is not the approach to take in these cases. But I would say that this Court doesn't even need to decide that more abstract waiver and consent question, because the language of the purported waiver here is so narrowed by the following language that specifically does not include cell phones, that even to the extent he could consent in exchange for the grant of probation, even to the extent that was lawful, he didn't knowingly consent. He may or may not have done that, and certainly he has not done it with such explicit understanding as my hypothetical suggested. That's right, Your Honor. The government has raised the fake name issue. I think there are a number of problems with that. If the Court would like me to address that, I'd be happy to. I see I'm over my time. 30 seconds. Yes, Your Honor. Three main problems. The false name. First of all, the evidence was not admissible. In fact, it was not even admitted in court. There are problems with it under the federal rules of evidence, and even to the process, at least someone needed to admit it, provide a foundation, attempt to authenticate it, provide some reason to believe its reliability. To the extent it was properly admitted and considered, it does not show how the name Peter ended up on this document. In fact, the document itself suggests that perhaps somebody else transferred the phone into Mr. Lara's name. And finally, even if it shows what the government suggests that it might, that he intentionally provided the name Peter, as the Court was already suggesting, the use of the correct first initial plus the correct last name, plus his address, combined then with him having exclusive use, control, and possession of this phone, I think that objectively that shows a reasonable expectation of privacy in the cell phone data. Thank you, Your Honors. Thank both sides for their argument.
judges: Fletcher, Paez, Berzon